**WHIPPLE AZZARELLO, LLC**
Attorneys at Law
———
161 Madison Avenue, Suite 325
Morristown, New Jersey 07960
Tel: (973) 267-7300
Fax: (973) 267-0031
**whippleazzarellolaw.com**

**JOHN C. WHIPPLE**
Certified by the Supreme Court of
New Jersey as a Criminal Trial Attorney

**JOHN A. AZZARELLO**
Admitted in New Jersey
and New York

**AMY VALENTINE McCLELLAND**
Of Counsel

**ADAM M. ELEWA**
Admitted in New Jersey
and New York

April 16, 2023

**VIA ECF**

Hon. Judge Christine P. O'Hearn, U.S.D.J.
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Street
Camden, NJ 08101

   Re:  **United States v. Peter Coker, Jr.**
       **Docket No. 22-CR-643 (CPO)**

Dear Judge O'Hearn:

  Our Office represents Mr. Peter Coker, Jr. in the above-captioned matter. Mr. Coker, Jr. writes in sur-reply to the government's reply seeking revocation of Judge Cathy L. Waldor's order setting conditions for Mr. Coker, Jr.'s pretrial release.[1] Mr. Coker, Jr. files this sur-reply only to respond to the theory of loss amount raised by the government in its reply brief.

  In sum, assuming every fact alleged in the government's reply brief is true, there are still *significant factual and legal flaws* with the government's proposed loss amount that undermine the sentencing guidelines calculation advanced by the government. These flaws raise the distinct possibility that, should Mr. Coker, Jr. be found guilty after exercising his Constitutional right to a trial, he would have spent more time in prison than he is likely to receive at sentencing. The court does not need to wait until Mr. Coker, Jr.'s right to due process is irreversibly violated as the government suggests. Gov't Reply at 4. Rather, the Bail Reform Act empowers this Court to consider the weight of the evidence against the person and how the evidence relates to a defendant's exposure to incarceration. *See* 18 U.S.C. 3142(g)(2).

  The Court need only reflect on one simple fact to understand the fatal flaw in the government's theory of loss under the guidelines: **the loss amount identified by the government is not charged in the indictment**. The Third Circuit's decision in *Banks* that followed the indictment in this case left the government with no choice but to concede the alleged intended loss from the reverse merger cannot be considered under § 2B1.1 of the guidelines. As a result, and in a desperate attempt to articulate a theory of loss at the eleventh hour, the government now alleges a loss that is neither charged in its indictment nor relevant to the charges set forth in counts one through three of the indictment against Peter Coker, Jr.

---

[1] The government's brief in support of its motion seeking revocation of Judge Waldor's order releasing Mr. Coker, Jr. (ECF No. 47) is hereinafter referred to as "Gov't Br" and its reply dated April 13, 2023 (ECF No. 53) is hereinafter referred to as "Gov't Reply."

**Legal Argument**

In its reply brief, the government states Peter Coker, Jr., and his co-conspirators "engaged in a number of **other fraudulent practices** in furtherance of the conspiracy that do, in fact, constitute actual loss and are appropriately considered within the § 2B1.1 loss calculation." Gov't Reply at 3 (emphasis added). The government then specifies that "in or around mid-April 2020, the Defendant and his co-conspirators secured a total $2.5 million private placement" from three accredited private hedge fund investors. The problem with the government's theory is the indictment does not even allege the $2.5 million private placement by investors was obtained by fraud, theft, or otherwise illegal conduct. In fact, the government's indictment fails to mention either the parties that made this private placement, or even the fact that a $2.5 million private placement occurred despite the indictment containing a meticulous catalog of all inflows and outflows of money to the various corporate entities and accounts involved in the alleged conspiracy. *See* ECF No. 1 at 7-20: *Indictment*. Under the Guidelines, if the $2.5 million private placement was not obtained via illegal conduct, it cannot constitute loss under the Guidelines, even prior to *Banks*. *See* USSG §2B1.1, Application Note 3.A(i) (defining actual loss as "reasonably foreseeable pecuniary harm *that resulted from the offense*.") (emphasis added). This is why the government cannot and has not argued in any of its briefs that the loss amount is 2.5 million dollars. Gov't Reply at 3-4; *see also* Gov't Br. at 7.

Moreover, the government has carefully failed to allege that the total $2.5 million private placement was lost, in any sense of the word. *See* Gov't Reply at 3. Rather, the only sum the government claims was lost was approximately $800,000 in "consulting fees" and "other payments" withdrawn by Mr. Coker, Jr., and his alleged co-conspirators. Gov't Br. at 4. Once again, the fatal flaw in the government's theory of loss is the indictment does not allege the $800,000 in consulting fees constitutes a loss to any victim. Also conspicuously absent from the indictment is any allegation that no services whatsoever were performed by Mr. Coker, Jr., and his co-conspirators to earn the $800,000 in consulting fees. Furthermore, the indictment does not allege the payment of consulting fees somehow furthered the securities fraud conspiracy alleged in count one of the indictment or the conspiracy to manipulate securities alleged in count three of the indictment. The government does not even allege in its reply brief that this money was wholly unearned. This is important to note because under the Guidelines, the "fair market value of . . . services rendered, by the defendant or other persons acting jointly with the defendant" is to be credited as an offset against loss. *See* USSG §2B1.1, Application Note 3(E)(i).

Moreover, it is unlikely that the government will be able to prove that the consulting fees received by Mr. Coker, Jr. and others had no legitimate basis. In addition to the government's tacit admission of this fact by its failure to charge this conduct in its indictment (under any conceivable theory of fraud or theft), it defies reason and common sense that the highly sophisticated and accredited private hedge fund investors who made the $2.5 million private placement were unaware of the consulting agreements pursuant to which Mr. Coker, Jr. and others were receiving fees and payments. It also defies reason and common sense that a defendant intent on committing fraud would document that fraud with written agreements. The fact that the government has not included with its submissions these written consulting agreements, or any evidence establishing that 'no work' was undertaken to earn the consulting fees, is again an omission that speaks volumes about the legal and factual flaws in the government's theory of loss amount in this case.

### Conclusion

      Detaining Mr. Coker, Jr. without bail in a case where the loss amount is zero under the guidelines would risk infringing on Mr. Coker, Jr.'s right to due process. For all the reasons discussed in Mr. Coker, Jr.'s prior submissions, including those raised here, Judge Waldor's order releasing Mr. Coker, Jr. on the strictest conditions of house arrest with location monitoring should be affirmed.

                                      Respectfully submitted,

                                      **WHIPPLE AZZARELLO, LLC**

                                      By: <u>s/John A. Azzarello</u>
                                              John A. Azzarello
                                              Adam M. Elewa

cc: Shawn P. Barnes, AUSA (by ECF).